# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 25-20147

LOCAL 813 INSURANCE TRUST FUND, THE LOCAL 813 PENSION
TRUST FUND, and THE LOCAL 1034 PENSION TRUST FUND,

*Plaintiffs-Appellants,*

v.

MCDERMOTT INTERNATIONAL, INCORPORATED; DAVID DICKSON;
STUART SPENCE; CHICAGO BRIDGE & IRON COMPANY;
PATRICK K. MULLEN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON

## BRIEF FOR PLAINTIFFS-APPELLANTS

JOHN RIZIO-HAMILTON
KATHERINE M. SINDERSON
AASIYA F.M. GLOVER
JONATHAN G. D'ERRICO
BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 554-1400

CHET B. WALDMAN
MATTHEW INSLEY-PRUITT
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
(212) 759-4600

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

LOCAL 813 INSURANCE TRUST FUND, the LOCAL 813 PENSION TRUST
FUND, and the LOCAL 813 PENSION TRUST FUND, on Behalf of Themselves
and All Others Similarly Situated,

*Plaintiffs-Appellants*,

vs.

MCDERMOTT INTERNATIONAL, INCORPORATED; DAVID DICKSON;
STUART SPENCE; CHICAGO BRIDGE & IRON COMPANY; and PATRICK
K. MULLEN,

*Defendants-Appellees.*

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the

outcome of this case. These representations are made in order that the judges of this

court may evaluate possible disqualification or recusal.

                                    /s/    Chet B. Waldman

*Appellants*

Local 813 Insurance Trust Fund          Chet B. Waldman
Local 813 Pension Trust Fund            Matthew Insley-Pruitt
Local 1034 Pension Trust Fund           Justyn Millamena
                                        Jeffrey Chambers
                                            Wolf Popper LLP

                                        John Rizio-Hamilton
                                        Katherine M. Sinderson
                                        Aasiya F. Mirza Glover
                                        Jonathan D'Errico
                                            Bernstein    Litowitz    Berger    &
                                            Grossmann, LLP

i

*Attorneys for Plaintiffs-Appellants*

*Appellees*

| | |
|---|---|
| McDermott International, Inc. | David D. Sterling |
| Chicago Bridge & Iron, Co. | Amy Pharr Hefley |
| David Dickson | J. Mark Little |
| Patrick Mullen | Anthony J. Lucisano |
| | Elizabeth Furlow Malpass |
| | Charles Frank Mace |
| |     Baker Botts LLP |

*Attorneys for Defendants-Appellees*

| | |
|---|---|
| Stuart Spence | Angela C. Zambrano |
| | Mason Parham |
| | Phillip Shaverdian |
| | Fabricio Archanjo |
| |     Sidley Austin LLP |

*Attorneys for Stuart Spence*

## **REQUEST FOR ORAL ARGUMENT**

Plaintiffs-Appellants respectfully request oral argument. The facts and legal arguments concerning this appeal are complex, and Plaintiffs respectfully submit that the decisional process would be significantly aided by oral argument.

# TABLE OF CONTENTS

REQUEST FOR ORAL ARGUMENT ................................................................. iv

TABLE OF AUTHORITIES ........................................................................... vi

STATEMENT OF JURISDICTION ...................................................................1

ISSUES PRESENTED FOR REVIEW ..............................................................2

STATEMENT OF THE CASE ..........................................................................2

    I.    Introduction ....................................................................................2

    II.   Background of the Case ...................................................................8

    III.  The District Court Originally Correctly Held That Plaintiffs
        Assert a Direct Claim ....................................................................9

    IV.  The District Court Originally Correctly Rejected the M&R
        Recommending Denial of Class Certification for Lack of
        Standing ........................................................................................11

    V.   The District Court Reversed Its Prior Rulings, Upended the
        Law of the Case, and Adopted the Erroneous Reasoning of the
        M&R ..............................................................................................14

SUMMARY OF THE ARGUMENT .................................................................15

ARGUMENT ...................................................................................................16

I     STANDARD OF REVIEW .........................................................................16

II    PLAINTIFFS HAVE STANDING BECAUSE THEIR CLAIMS ARE
      DIRECT UNDER APPLICABLE LAW ......................................................17

    A.   Plaintiffs' 14(a) Claims Are Direct Under Federal Law .....................17

    B.   Plaintiffs' Claim Is Direct Under Delaware Law ...............................22

    C.   In Addition to Contravening Federal Law, the Lower Court
        Misapplied Delaware Law .................................................................26

1.    *Citigroup* clarified that *Tooley* is not dispositive. ....................26

2.    Even under *Tooley,* Plaintiffs' claim is direct............................28

3.    The M&R applied an obsolete test for prong two that *Tooley* rejected ...............................................................................33

4.    The M&R rested its erroneous holding on a misstatement of Plaintiffs' damages theory. ........................................................36

5.    The Court below did not address Plaintiffs' rescission damages theory ........................................................................38

D.    *Smith v. Waste Management* Does Not Govern This Claim ...............39

III    THE DISTRICT COURT ABUSED ITS DISCRETION IN UPENDING THE LAW OF THE CASE ...........................................................42

A.    Courts May Only Reverse the Law of the Case in Extraordinary Situations ............................................................................42

B.    The Law of the Case Doctrine Applies to Reconsideration of Prior Rulings by the Same Court and Judge ......................................43

C.    The Order Fails the Three-Part Test to Reverse the Law of the Case .....................................................................................46

1.    As Defendants acknowledged, there is no "substantially different" evidence ...................................................................46

2.    The law did not change ...........................................................47

3.    The District Court's prior decisions were not clearly erroneous—they were correct ...................................................47

IV    The M&R Erred in Concluding Plaintiffs Failed to Show Predominance ....48

CONCLUSION ...................................................................................51

CERTIFICATE OF COMPLIANCE ........................................................53

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alaska Elec. Pens. Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ...............................................................16

*Albert v. Alex. Brown Mgmt. Servs., Inc.*,
   Nos. 762-N, 763-N, 2005 Del. Ch. LEXIS 133 (Del. Ch. Aug. 26, 2005) ..........30

*All. for Good Gov't v. Coal. for Better Gov't*,
   998 F.3d 661 (5th Cir. 2021) .................................................................48

*In re Allstate Corp. Sec. Litig.*,
   No. 16 C 10510, 2020 U.S. Dist. LEXIS 239236 (N.D. Ill. Dec. 21, 2020)........38

*Amorosa v. AOL Time Warner Inc.*,
   409 F. App'x 412 (2d Cir. 2011) ............................................................19

*In re AOL Time Warner, Inc. Securities and ERISA Litigation*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004) ....................................................11

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   757 F. Supp. 2d 260 (S.D.N.Y. 2010) .................................................. 20, 22, 50

*In re Bank of Amer. Corp. Sec., Derivative & ERISA Litig.*,
   281 F.R.D. 134 (S.D.N.Y. 2012) ...........................................................22

*Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
   866 F. Supp. 2d 223 (S.D.N.Y. 2012) .....................................................20

*Brookfield Asset Mgmt., Inc. v. Rosson*,
   261 A.3d 1251 (Del. 2021) ...................................................................33

*Brown v. Brewer*,
   No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 6086383
   (C.D. Cal. June 17, 2010) ....................................................................49

*Broyles v. Cantor Fitzgerald & Co.*,
   No. 10-854-JJB-CBW, 2017 U.S. Dist. LEXIS 236714
   (M.D. La. Feb. 2, 2017) ......................................................................41

*Broyles v. Commonwealth Advisors, Inc.*,
   936 F.3d 324 (5th Cir. 2019) .............................................................. 6, 24, 41

*In re Celgene Corp., Inc. Sec. Litig.*,
  747 F. Supp. 3d 748 (D.N.J. 2024) ........................................................43

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) ..............................................................................43

*Citigroup Inc. v. AHW Inv. P'ship*,
  140 A.3d 1125 (Del. 2016) ............................................................ passim

*City Pub. Ser. Bd. v. Gen. Elec. Co.*,
  935 2d 78  (5th Cir. 1991) .....................................................................44

*Civelli v. Mulacek*,
  No. H-17-3739, 2025 U.S. Dist. LEXIS 129616
  (S.D. Tex. Mar. 28, 2025)........................................................ 45, 47, 48

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ........................................................................ 16, 48

*Copeland v. Lane*,
  621 F. App'x 449 (9th Cir. 2015) ..........................................................25

*Culverhouse v. Paulson & Co. Inc.*,
  791 F.3d 1278 (11th Cir. 2015) .............................................................17

*In re Daimlerchrysler AG Sec. Litig.*,
  294 F. Supp. 2d 616 (D. Del. 2003)................................................ 20, 49

*Dauzat v. Carter*,
  752 F. App'x 188 (5th Cir. 2019) ..........................................................42

*Deeds v. Whirlpool Corp.*,
  Civ. A. H-15-2208, 2017 U.S. Dist. LEXIS 127461
  (S.D. Tex. Aug. 10, 2017)......................................................................45

*Delman v. GigAcquisitions3, LLC*,
  288 A.3d 692 (Del. Ch. 2023) ........................................................ 35, 37

*Deutsche Bank Nat'l Trust Co. v. Burke*,
  902 F.3d 548 (5th Cir. 2018) .................................................................47

*Dietrich v. Harrer*,
  857 A.2d 1017 (Del. Ch. 2004) ........................................................ 5, 26

*In re Ebix, Inc. Stockholder Litig.*,
  CONSOLIDATED C.A. No. 8526-VCN, 2014 Del. Ch. LEXIS 132
  (Del. Ch. July 24, 2014) ........................................................... 5, 26, 29

*In re EQT Corp. Sec. Litig.*,
  No. 2:19-cv-00754-RJC, 2022 U.S. Dist. LEXIS 143232
  (W.D. Pa. Aug. 11, 2022) ............................................................ 20, 51

*Feder v. Elec. Data Sys. Corp.*,
  429 F.3d 125 (5th Cir. 2005) ............................................................42

*In re Ford Motor Co.*,
  591 F.3d 406 (5th Cir. 2009) ............................................................43

*Goldkrantz v. Griffin*,
  No. 97 CIV. 9075(DLC), 1999 U.S. Dist. LEXIS 4445
  (S.D.N.Y. Apr. 6, 1999) ................................................................ 20, 49

*In re Heckman Securities Litigation*,
  869 F. Supp. 2d 519 (D. Del. 2012) ...................................................51

*Hernandez v. Garland*,
  No. 22-60110, 2023 U.S. App. LEXIS 24674 (5th Cir. Sep. 15, 2023) ........ 44, 48

*Hopwood v. State of Texas*,
  236 F.3d 256 (5th Cir. 2000) ............................................................47

*In re Inotiv, Inc. Sec. Litig.*,
  Cause No. 4:22-CV-045-PPS-JEM, 2024 U.S. Dist. LEXIS 57688
  (N.D. Ind. Mar. 29, 2024) ................................................................19

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964) ........................................................................18

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964) ........................................................................39

*Jaroslawicz v. M&T Bank Corp.*,
  No. 15-00897-EJW, 2024 U.S. Dist. LEXIS 21269 (D. Del. Feb. 7, 2024) ........49

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
  906 A.2d 766 (Del. 2006) .................................................... 26, 28, 29, 32

*Kona Enters., Inc. v. Estate of Bishop*,
    179 F. 3d 767 (9th Cir. 1999) ...............................................................17

*Lee v. Fisher*,
    70 F.4th 1129 (9th Cir. 2023) ...............................................................24

*Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, L.L.C.*,
    850 Fed. Appx. 213 (5th Cir. 2021)......................................................47

*McKay v. Novartis Pharm. Corp.*,
    751 F.3d 694 (5th Cir. 2014) .................................................................43

*Miller v. Brightstar Asia, Ltd.*,
    43 F.4th 112 (2d Cir. 2022) ..................................................................17

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970)................................................................... 4, 11, 18

*In re MultiPlan Corp. Stockholders Litig.*,
    268 A.3d 784 (Del. Ch. 2022) ..............................................................29

*Musacchio v. United States*,
    136 S. Ct. 709 (2016)............................................................................42

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,
    118 A.3d 175 (Del. 2015) ........................................................ 22, 28, 34

*New Jersey and Its Div. of Inv. v. Sprint Corp.*,
    314 F. Supp. 2d 1119 (D. Kan. 2004)...................................................20

*New York City Emps' Retir. Sys. v. Jobs*,
    593 F.3d 1018 (9th Cir. 2010) ...............................................................25

*In re Real Estate Assoc. Ltd. P'ship Litig.*,
    223 F. Supp. 2d 1142 (C.D. Cal. 2002) ................................................20

*Rice v. Genworth Fin. Inc.*,
    No. 3:17cv59, 2017 U.S. Dist. LEXIS 137110 (E.D. Va. Aug. 25, 2017)..........39

*In re Romeo Power Inc. Sec. Litig.*,
    21 Civ. 3362 (LGS), 2022 U.S. Dist. LEXIS 99005 (S.D.N.Y. June 2, 2022)....36

*Rudolph v. Cummins*,
    No. H-06-2671, 2007 U.S. Dist. LEXIS 28869 (S.D. Tex. Apr. 19, 2007) .........40

*Salcido ex rel. K.L. v. Harris Cnty., Texas*,
 No. H-15-2155, 2018 U.S. Dist. LEXIS 212983 (S.D. Tex. Dec. 18, 2018) ....... 45

*Sehoy Energy LP v. Haven Real Estate Grp., LLC*,
 No. 12387-VCG, 2017 Del. Ch. LEXIS 58 (Del. Ch. Apr. 17, 2017) ................ 29

*Smith v. Cain*,
 77 F.3d 476 (5th Cir. 1995) ..................................................... 17, 42, 45

*Smith v. Robbins & Myers*,
 969 F. Supp. 2d 850 (S.D. Ohio 2013) ................................................. 25

*Smith v. Waste Management*,
 407 F.3d 381 (5th Cir. 2005) ................................................... 27, 39, 41

*Thornton v. Bernard Techs., Inc.*,
 No. 962-VCN, 2009 Del. Ch. LEXIS 29 (Del. Ch. Feb. 20, 2009)..................... 32

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
 845 A.2d 1031 (Del. 2004) ........................................................ passim

*TSC Indus., Inc. v. Northway, Inc.*,
 426 U.S. 438 (1976)............................................................ 4, 10, 18

*In re Tyson Foods, Inc.*,
 919 A.2d 563 (Del. Ch. 2007) ......................................................... 29

*Unger v. Amedisys, Inc.*,
 401 F.3d 316 (5th Cir. 2005) .......................................................... 42

*United States ex rel. Conyers*,
 108 F.4th 351 (5th Cir. 2024) ......................................................... 17

*Vine v. PLS Fin. Servs., Inc.*,
 807 F. App'x 320 (5th Cir. 2020) ...................................................... 47

*Virginia Bankshares, Inc. v. Sandberg*,
 501 U.S. 1083 (1991)................................................................. 25

*Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*,
 403 F. Supp. 3d 610 (S.D. Tex. 2019)................................................. 45

*In re Wells Real Estate Inv. Trust, Inc.*,
 CIVIL ACTION NO. 1:07-CV-862-CAP, 2010 U.S. Dist. LEXIS 143057
 (N.D. Ga. Aug. 2, 2010) .......................................................................25

*Williams v. Bexar County*,
 No. 98-51187, 2000 U.S. App. LEXIS 39928 (5th Cir. July 14, 2000) ..............43

*In re Willis Towers Watson PLC Proxy Litig.*,
 No. 1:17-cv-1338 (AJT/JFA), 2020 U.S. Dist. LEXIS 162810
 (E.D. Va. Sept. 4, 2020) .......................................................................49

*Zarnow v. City of Wichita Falls*,
 614 F.3d 161 (5th Cir. 2010) ................................................................44

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
 2:21-cv-09914-CAS (JCx), 2022 U.S. Dist. LEXIS 192565
 (C.D. Cal. Oct. 20, 2022) ........................................................ 19, 21, 24

**Statutes**

15 U.S.C. § 78aa ...................................................................................1

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. §§ 1331 and 1337.1 ..................................................................1

**Other Authorities**

1B J. Moore, J. Lucas, & T. Currier,
 Moore's Federal Practice ......................................................................41

**Rules**

Rule 14a-9 ...........................................................................................18

## <u>STATEMENT OF JURISDICTION</u>

Plaintiffs-Appellants Teamster Local 813 Insurance Trust Fund, Local 813 Pension Trust Fund, and Local 1034 Pension Trust Fund (collectively "Local 813" or "Plaintiffs")[1] appeal a judgment dismissing the securities complaint and order denying the Renewed Motion for Class Certification (ROA.7487) and adopting Magistrate Judge Edison's September 11, 2023 Memorandum and Recommendation (ROA.10074). The Amended Complaint in this Action (ROA.961) asserts that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). The District Court had jurisdiction under Exchange Act § 27, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331 and 1337.1. The District Court dismissed the action with prejudice and entered judgment on March 24, 2025 (ROA.13991), as amended on March 31, 2025 (ROA.14006). Appellants timely filed a notice of appeal on April 23, 2025. ROA.14008. This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] Local 813 intervened in the action after the filing of the Amended Complaint and the class certification motion sought their appointment as Class Representative. ROA.7358; ROA.10350. Defendants did not oppose. ROA.10663. Local 813 adopts the submissions and arguments made by plaintiffs in this action prior to Local 813's intervention.

## ISSUES PRESENTED FOR REVIEW

1. Is Plaintiffs' Section 14(a) claim alleging infringement of shareholders' right to vote, and seeking damages based on a stock price decline or rescission, a direct claim?

2. Did the District Court abuse its discretion in reversing the law of the case after four years of multiple decisions correctly holding Plaintiffs had brought a direct claim and had standing, when there was undisputedly no intervening change in the law or relevant facts?

## STATEMENT OF THE CASE

### I.     Introduction

This case involves an error of law that was made in a particularly troublesome way: by reversing the law of the case, without substantive analysis, after four years of litigation and multiple decisions squarely and correctly deciding the same legal issue in Plaintiffs' favor. The case was brought by shareholders of McDermott International, Inc. ("McDermott") who suffered economic losses caused by misrepresentations that deprived them of their federal right to a fully informed vote on the merger between McDermott and Chicago Bridge & Iron, N.V. ("CB&I").

On March 7, 2025, the Honorable George C. Hanks, Jr., U.S. District Judge for the Southern District of Texas (the "District Court"), held that Plaintiffs lacked standing to bring a Section 14(a) claim (the "Order") on the erroneous ground that Plaintiffs assert a derivative, rather than direct, claim. ROA.13982. In its Order, the

District Court adopted a memorandum and recommendation issued by Magistrate Judge Andrew M. Edison on September 11, 2023 (the "M&R"), which the District Court had rejected a year and a half earlier. ROA.10074; ROA.10164. In adopting the same M&R that the District Court had previously rejected, the District Court overturned the law of the case after four years and after the parties had completed fact and expert discovery based on the District Court's prior repeated and correct holdings on the identical issue. ROA.4794. The Order reversed three of the District Court's prior decisions: (i) a denial of Defendants' motion to dismiss, (ii) a rejection of the M&R recommending denial of class certification, and (iii) an order upholding that rejection of the M&R in the face of Defendants' request for clarification. Not only were the District Court's first three decisions correct, but—as Defendants' own briefing and the M&R acknowledged—nothing changed to warrant the District Court's reversal.

Plaintiffs ask this Court to rule that the District Court was correct when it originally held that Plaintiffs' claim was direct and Plaintiffs have standing. The District Court first issued this correct holding when it denied Defendants' motion to dismiss on April 13, 2021, holding that Plaintiffs are "entitled to bring, and ha[ve] pled, a direct claim." ROA.4806. The District Court further held that Plaintiffs' damages theory—which alleges that Plaintiffs were injured by declines in the stock price of their shares caused by revelations of previously concealed information—

3

"sufficiently pled loss causation" as part of the direct claim. ROA.807-08.  More than two years later, the District Court issued a second order rejecting the M&R's recommendation that the District Court "change the law of the case" to hold that Plaintiffs "lack[] standing under Rule 23.1" and deny class certification on this same basis. ROA.10164. These initial rulings were correct, and the District Court's belated reversal, with no stated analysis, contradicts long-settled federal securities and applicable Delaware law. The District Court's Order should be reversed for several reasons.

*First*, as the District Court originally explained in its first order denying Defendants' motion to dismiss, the M&R's reasoning contradicts abundant federal precedent. The Supreme Court has made clear in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 381, 397 (1970) and *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 443-44 (1976) that shareholders like Plaintiffs may bring direct claims under Section 14(a) to remedy violations of their right to cast an informed vote. ROA.4806. Moreover, as the District Court explained in its first order, *see* ROA.4808, under *Mills* and other federal cases, Section 14(a) class members may seek damages based on the stock price declines caused by the Section 14(a) violation. *See Mills*, 396 U.S. at 388-89 (explaining that Section 14(a) shareholders may recover "monetary relief" if a merger resulting from a false or misleading proxy statement "resulted in a reduction of the earnings or earnings potential of their holdings").

4

**Second**, an undisputedly direct Section 14(a) claim is **not** transformed into a derivative claim simply because it seeks damages based on stock price declines caused by the Section 14(a) violation. ROA.10164; ROA.4808. Indeed, parallel claims under Section 10(b) based on some of the same price declines pled here have proceeded as direct claims for four years, but Defendants have never suggested they are derivative claims representing a harm to the Company. When it reversed course after four years to adopt the M&R's erroneous reasoning, the District Court rejected numerous federal decisions permitting Section 14(a) plaintiffs to bring direct claims based on stock price declines, simply because no court or jury had yet formally "awarded" such damages—a standard that has no basis in the law. ROA.13982.

**Third**, under well-settled Delaware law, which all parties agree applies to determine whether claims asserted against McDermott are derivative or direct, Plaintiffs' Section 14(a) claim is clearly direct. Delaware authority plainly establishes that deprivation of the right to a fully informed vote—the violation alleged here—gives rise to a direct claim. *See In re Ebix, Inc. Stockholder Litig.*, CONSOLIDATED C.A. No. 8526-VCN, 2014 Del. Ch. LEXIS 132, at *49 (Del. Ch. July 24, 2014) (holding that a claim implicating the right "to be fully informed" on a "matter on which [shareholders] are requested to vote" alleges "an injury independent of any harm to the corporation" and therefore "a direct claim"); *Dietrich v. Harrer*, 857 A.2d 1017, 1029 (Del. Ch. 2004) (holding that "disclosure allegations

are direct claims, as they are based in rights secured to stockholders by various statutes"). Further, the Supreme Court of Delaware has expressly held that a shareholder's securities law claims based on a decline in share value "are direct" because those claims "are personal to the shareholder and do not belong to the corporation itself." *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1126 (Del. 2016). This Circuit applied *Citigroup* to reject the argument that securities law claims should be "converted into derivative actions" under Delaware law. *Broyles v. Commonwealth Advisors, Inc.*, 936 F.3d 324, 326 (5th Cir. 2019).

**Fourth**, the M&R misconstrued the Delaware law it did consider in its direct/derivative analysis. The M&R applied a two-prong test for direct versus derivative claims outlined in the decision *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004). Citigroup later clarified that the *Tooley* test applies to breach of fiduciary duty claims and is not considered when a shareholder asserts the violation of a personal right, such as the Section 14(a) voting rights at issue here. Even applying the *Tooley* test, however, Plaintiffs' Section 14(a) claim satisfies both prongs and is clearly direct. As the M&R agreed, Plaintiffs satisfy the first prong because the shareholder class members allegedly suffered a direct harm through a violation of their right to a fully informed vote. Plaintiffs also satisfy the second prong because the individual shareholder class members—not McDermott—would benefit from the damages Plaintiffs seek. Here, Plaintiffs seek damages only for

6

those shareholders who held McDermott shares as of the Record Date through at least one stock price decline caused by a corrective disclosure. Plaintiffs measure damages based only on the declines attributable to the correction of the alleged misrepresentations in the proxy statement and related solicitation materials at issue in this case, which measures the actual economic losses caused by the misrepresentations.

The M&R, however, wrongly concluded that under Delaware law, Plaintiffs could not satisfy prong two because Plaintiffs seek damages based on a stock price decline, which the M&R reasoned cannot be separated from a harm to the Company. But this reasoning contradicts Delaware case law; no Delaware court has ever held that a damages theory transforms a direct claim into a derivative claim, and Delaware courts have consistently explained that *Tooley* **rejected** the M&R's requirement that shareholders show an injury separate from other shareholders to bring a direct claim. In any event, as Plaintiffs' expert evidence makes clear, Plaintiffs' damages do not measure the harm to the Company, either from the Merger or from some amount the Company purportedly "overpaid" for its acquisition of CB&I. Plaintiffs also asserted an alternative rescission damages theory that independently supports a direct claim which neither the M&R nor the District Court even addressed before finding a lack of standing.

7

*Fifth*, because no change in the law or facts occurred between its prior decisions and the Order, and because the District Court's original decisions were correctly decided, the District Court abused its discretion when it reversed its prior decisions and upended the law of the case to adopt the M&R's erroneous reasoning.

*Finally*, to the extent the District Court adopted the M&R's finding that Plaintiffs failed to satisfy the predominance requirement to certify a class, the District Court erred because Plaintiffs' damages theories do match their theory of liability.

## II.     Background of the Case

This action arises from a complaint filed on September 19, 2019, bringing claims under Section 14(a) and Section 20(a) alleging that Defendants made material misrepresentations and omissions in a proxy statement and proxy solicitation materials ("Proxy") used to solicit McDermott shareholders' approval of a merger between McDermott and CB&I (the "Merger"). Plaintiffs allege, among other things, that Defendants overstated and thus misrepresented the due diligence that McDermott performed on CB&I's four largest construction projects (the "Focus Projects"), which CB&I had internally forecast would generate at least $1 billion in additional, undisclosed costs on these Focus Projects.  After the Merger, a series of corrective disclosures revealed the true state of the due diligence performed prior to the Merger vote, and these revelations caused declines in McDermott's stock price.

Just a few months after the completion of the Merger, the Company declared bankruptcy in large part due to the problems in the Focus Projects. Plaintiffs allege that Defendants' misrepresentations about due diligence deprived the McDermott shareholders entitled to vote on the Merger of their right to cast an informed vote.

## III. The District Court Originally Correctly Held That Plaintiffs Assert a Direct Claim

Since the beginning of this case, Plaintiffs have pled a direct theory of liability under Section 14(a) and have sought damages based on the stock price declines attributable to the revelation of the misrepresentations in the Proxy and related materials. *See* ROA.961 ¶¶ 36, 275 (pleading that McDermott shareholders' voting rights were violated by Defendants' "false and misleading statements of material fact," which denied McDermott shareholders "the opportunity to make an informed decision when voting on the Merger"); ROA.961 §VII (alleging economic losses from stock price declines when the truth became known).

On January 30, 2020, Defendants moved to dismiss the Complaint, arguing that the Complaint "pleads only a derivative § 14(a) claim" on the ground that "[a]llegations tied to a 'declining stock price' fall within a category of injury that is a 'purely derivative harm.'" ROA.1766. Defendants further argued that Plaintiffs' damages theory should be construed as a claim that McDermott "overpaid" for CB&I, even though Defendants have never argued—and indeed, could not—that the very same stock price declines in the parallel Section 10(b) claims represent a

9

purported "overpayment" and render the Section 10(b) claims derivative. ROA.1771. However, as explained in the opposition to Defendants' motion to dismiss, "[n]owhere in the Complaint is Plaintiff seeking compensation on behalf of McDermott for overpaying for CB&I." ROA.3498.

On April 13, 2020, the District Court denied Defendants' motion to dismiss. In its order, the District Court explained that "[u]nder Supreme Court precedent, shareholders have long been able to bring direct Section 14(a) claims when those shareholders have been deprived of the right to cast an informed vote." ROA.4806 (citing *Mills*, 396 U.S. at 381, 397 and *TSC*, 426 U.S. at 443-44). Further, the District Court correctly found that the Complaint here pled "a direct claim" pursuant to "*Mills* and the Supreme Court's other cases discussing Section 14(a)" because the Complaint alleges that "members of the proposed Class were denied the opportunity to make an informed decision when voting on the Merger" between Defendant McDermott and its target CB&I. ROA.4807. Finally, the District Court correctly held that the Complaint adequately pled loss causation based on allegations that "the merger between McDermott and CB&I, and the misleading proxy materials that facilitated it, led to drastic drops in McDermott's stock price as the truth [] became known." ROA.4807. The District Court accurately cited cases supporting the holding that a direct Section 14(a) plaintiff may seek damages based on stock price

declines: *In re AOL Time Warner, Inc. Securities and ERISA Litigation*, 381 F. Supp. 2d 192, 231 (S.D.N.Y. 2004) and *Mills*, 396 U.S. at 388–89.

## IV.   The District Court Originally Correctly Rejected the M&R Recommending Denial of Class Certification for Lack of Standing

Plaintiffs filed their motion for class certification on October 28, 2022.  In support of their motion, Plaintiffs filed the expert report of Michael L. Hartzmark, Ph.D., which supplied a class-wide damages methodology "based on the diminution in the value of McDermott shares, as measured by the stock price declines following the alleged corrective disclosures."   ROA.7595.   This was the exact theory of damages and loss causation pled in the Complaint and endorsed by the District Court when it denied Defendants' motion to dismiss. Despite the District Court's prior holdings, Defendants raised their rejected standing arguments again at class certification, wrongly claiming that Plaintiffs' "alleged damages consist solely of harm that flows from the alleged harm to McDermott itself from the merger." ROA.8223. Defendants again mischaracterized Plaintiffs' damages theory as seeking "to recover damages for a stock-drop loss attributable to one company overpaying for another." ROA.8223. Again Plaintiffs were forced to explain that they have never asserted an overpayment claim, and in fact "specifically disclaimed this theory at the motion to dismiss stage." ROA.8595. Damages measured by "the harm to **shareholders** due to the decline in **price of their shares**" from specific misrepresentations about due diligence on the Focus Projects does not equal the

amount McDermott may or may not have overpaid for all of CB&I, and Plaintiffs have never suggested that it does. ROA.8595.

Following a full-day evidentiary hearing on May 24, 2023 and limited supplemental briefing filed on June 2, 2023, Magistrate Judge Edison issued the M&R recommending that the District Court deny class certification on the grounds of standing and Rule 23(b)(3) predominance. The M&R agreed that the damages theory proffered in the class certification motion aligned with the theory asserted by the Complaint and upheld by the District Court. ROA.10088-93. Despite that fact, the M&R recommended that the District Court reverse its original order finding that the Complaint alleged a direct claim, on the ground that Plaintiffs' damages theory transforms the claim into a derivative one. *Id*. Consequently, the M&R concluded that Plaintiffs lacked standing. On September 17, 2023, Plaintiffs requested a stay of the deposition schedule that was set to close on December 1, 2023, until the District Court resolved Plaintiffs' anticipated objections to the M&R and the parties had certainty as to Plaintiffs' standing. ROA.10102. Notwithstanding the M&R's conclusion that Plaintiffs lacked standing, the Magistrate Judge ordered the parties to proceed with depositions. ROA.14942. On September 25, 2023, Plaintiffs filed their objections to the M&R, arguing, among other things, that Plaintiffs claim is direct because McDermott shareholders were injured directly and only class

members—not McDermott or even all McDermott shareholders—would receive the benefit of any recovery. ROA.10133-49.

On September 29, 2023, after "having carefully considered the Objections, the Memorandum and Recommendation, the pleadings, and the record," the District Court issued an order rejecting the M&R. ROA.10164. The District Court then ordered the parties to resubmit class certification briefing "focuse[d] *solely* on the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23(a) and the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b)(3)." *Id.*  Having rejected the M&R's conclusion on the derivative/direct argument, the District Court did not request any briefing on standing.

On October 5, 2023, Defendants moved for "clarification" of the District Court's order rejecting the M&R, which, as the District Court recognized, improperly attempted to revive the M&R.  ROA.10170. The District Court denied Defendants' clarification motion just three weeks later, again affirming Plaintiffs' standing: "[t]he Court's order speaks for itself.  The Court declined to adopt Judge Edison's memorandum and recommendation[.]" ROA.10262. Plaintiffs' renewed class certification motion was fully briefed on November 17, 2023, and the parties continued with discovery.

13

In reliance upon the District Court's repeated decisions that Plaintiffs have standing to bring this Section 14(a) claim, Plaintiffs vigorously litigated the claims on behalf of the Class. As Magistrate Judge Edison denied Plaintiffs' request to stay depositions pending resolution of the standing issue, the parties proceeded to complete all fact and expert discovery, including the production, receipt, and review of over 400,000 documents, the depositions of nearly 40 fact witnesses, the exchange of well over 500 pages of expert reports, and the depositions of seven expert witnesses.

## V.    The District Court Reversed Its Prior Rulings, Upended the Law of the Case, and Adopted the Erroneous Reasoning of the M&R

On December 30, 2024, Defendants filed a motion seeking leave to submit a letter and exhibits purporting to show that Plaintiffs' expert disclosures "confirmed" that Plaintiffs seek damages that "are exclusively derivative in nature because they flow through alleged harm to McDermott based on its business decision to acquire CB&I."  ROA.13338. On January 9, 2025, the District Court granted Defendants' motion to submit their letter and exhibits, ROA.13774, and Plaintiffs submitted their response. ROA.13775.

As Plaintiffs explained, and as Defendants acknowledged, the expert depositions only "confirm" that Plaintiffs' damages evidence rests on the same theory and arguments Plaintiffs have advanced from the inception of the case. ROA.13775. For example, Plaintiffs' expert on loss causation and damages, Mr.

14

Chad Coffman, disclosed a damages methodology based on the stock price declines in response to the corrective disclosures related to the alleged misrepresentations—the same theory Plaintiffs advanced in the Complaint, at the motion to dismiss stage, and in the original class certification briefing. Further, Mr. Coffman explained that his methodology does **not** calculate some purported overpayment or damages to McDermott from its acquisition. ROA.13781. Finally, Plaintiffs noted that their expert offered an alternative damages calculation based on a direct rescission theory (*i.e.*, placing class members in the position they would have been in had the Merger never occurred), which Defendants did not even address. ROA.13775.

On March 7, 2025, the District Court issued the Order denying class certification for "lack of standing." ROA.13991. The District Court provided no explanation for this complete reversal of its prior rulings, other than to note that it had considered the parties' "supplemental briefing[] and the record."  The District Court identified no new facts or any change in law to justify its "reconsider[ation of] its prior decision" or its adoption of "the reasoning of" the same M&R the District Court had rejected a year and a half earlier.  After the District Court entered final judgment, Plaintiffs timely appealed. ROA.14008.

## SUMMARY OF THE ARGUMENT

The District Court's ruling on standing in its denial of class certification constitutes reversible error.

*First*, the District Court erred in adopting the reasoning of the M&R to find that Plaintiffs lack standing to bring a direct Section 14(a) claim seeking damages based on stock price declines. Under both federal and applicable Delaware law, Plaintiffs' Section 14(a) claim is direct and Plaintiffs' damages theory does not transform their undisputedly direct claim into a derivative one. The M&R misconstrued inapposite Delaware and Fifth Circuit cases. Contrary to the M&R, Plaintiffs' claim is clearly direct.

*Second*, the District Court abused its discretion in overturning the law of the case without substantially different evidence, a change in the law, or prior erroneous decisions.

*Third*, to the extent the District Court also adopted the M&R's reasoning that Plaintiffs' damages theory fails to satisfy the Rule 23(b) predominance requirement, the M&R also erred because Plaintiffs' damages theory does match its theory of liability, as required by *Comcast Corp. v. Behrend*, <u>569 U.S. 27, 33</u> (2013).

**ARGUMENT**

## I    <u>STANDARD OF REVIEW</u>

This Court reviews the "legal questions implicated" by "the district court's decision not to certify the putative class" "*de novo*." *Alaska Elec. Pens. Fund v. Flowserve Corp.*, <u>572 F.3d 221, 227</u> (5th Cir. 2009). Whether a claim is direct or derivative "is a question of law, and we review it *de novo*." *See Miller v. Brightstar*

16

*Asia, Ltd.*, 43 F.4th 112, 121 (2d Cir. 2022); *Culverhouse v. Paulson & Co. Inc.*, 791 F.3d 1278, 1279-80 (11th Cir. 2015) (same); *Kona Enters., Inc. v. Estate of Bishop*, 179 F. 3d 767, 769 (9th Cir. 1999) (same). This Court also reviews any "mixed questions of law and fact *de novo*." *United States ex rel. Conyers*, 108 F.4th 351, 356 (5th Cir. 2024). Accordingly, *de novo* review applies here.

The question of whether the Court properly applied the law of the case doctrine in light of the fact there were no changes to the facts or law is reviewed for abuse of discretion. *Smith v. Cain*, 77 F.3d 476, 476 (5th Cir. 1995).

## II   PLAINTIFFS HAVE STANDING BECAUSE THEIR CLAIMS ARE DIRECT UNDER APPLICABLE LAW

For over 50 years, the Supreme Court has recognized investors' right to bring direct claims under Section 14(a) and seek monetary redress for a company's infringement of voting rights through misleading statements in proxy solicitations—just as 14(a) Plaintiffs have done here. Scores of courts have followed suit. Further, under applicable Delaware law, Plaintiffs' claim is direct.

### A.   Plaintiffs' 14(a) Claims Are Direct Under Federal Law

Before the District Court erroneously reversed itself, it correctly recognized that the 14(a) Plaintiffs are "entitled to bring, and ha[ve] pled, a direct claim." ROA.4806; *see also* ROA.10164 (rejecting Magistrate Judge Edison's recommendation to deny class certification on the flawed ground that 14(a) Plaintiffs assert derivative claims). This original holding comports with Supreme Court

17

precedent and the decisions of federal courts that have addressed Section 14(a) claims—all of which support that Plaintiffs' claims are direct, not derivative.

The Supreme Court has long recognized the right of shareholders to bring direct Section 14(a) claims where, like here, they have been deprived of the right to cast an informed vote.  In *Mills*, the Supreme Court upheld both direct and derivative claims under Section 14(a) based on a misleading merger proxy, stressing that Section 14(a) was "intended to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with 'explanation to the stockholder of the real nature of the questions for authority to cast his vote is sought.'" 396 U.S. 375, 381, 397 (1970) (citing *J. I. Case Co. v. Borak*, 377 U.S. 426 (1964)). The Supreme Court recognized that "monetary relief might be afforded to the shareholders" where "the misleading aspect of the [proxy] solicitation did not relate to the terms of the merger," provided "the merger resulted in a reduction of the earnings or earnings potential of their holdings." *Id*. at 388–89. This is precisely the recovery Plaintiffs seek here: monetary relief reflecting the stock price decline, or the reduction in "the earnings potential of their holdings." *Id*.

In *TSC*, 426 U.S. at 448, the Supreme Court again recognized the "broad remedial purpose" of Rule 14a-9 to "ensure disclosures by corporate management in order to enable the shareholders to make an informed choice."  There, the Supreme

Court upheld a direct claim under Section 14(a) arising from a misleading merger proxy and allowed the case to go to trial. *Id.*

Precisely because binding federal law so clearly establishes a shareholder's right to bring a direct Section 14(a) claim for misleading proxy solicitations, federal courts have consistently permitted Section 14(a) plaintiffs to seek damages based on a stock price decline.[2] *See Amorosa v. AOL Time Warner Inc.,* 409 F. App'x 412, 415 (2d Cir. 2011) (Sotomayor, J.) (recognizing that, under § 14(a), a plaintiff may recover damages for "his stock['s] lost value when [the company's] share prices fell as information concerning [the company's] accounting practices was gradually disseminated to the public") (affirming dismissal on unrelated basis); *In re Inotiv, Inc. Sec. Litig.*, Cause No. 4:22-CV-045-PPS-JEM, 2024 U.S. Dist. LEXIS 57688, at *111 (N.D. Ind. Mar. 29, 2024) (where "amended complaint specifies when and by how much Inotiv's stock dropped following the alleged misstatements or omissions contained in Inotiv's proxy after" corrective disclosures," "that suffices to plausibly allege loss causation supporting Plaintiff's proxy solicitation claim under § 14(a)"); *Zhou v. Faraday Future Intelligent Elec. Inc.*, 2:21-cv-09914-CAS (JCx), 2022 U.S. Dist. LEXIS 192565, at *36 (C.D. Cal. Oct. 20, 2022) ("Section

---

[2] Some courts have permitted plaintiffs to bring Section 14(a) claims as derivative, and the Supreme Court in *Borak* explicitly held that to be possible. Such decisions certainly do not foreclose a direct 14(a) claim.

14(a) claim is direct, and plaintiffs have standing" where plaintiffs sought damages based on share price decline after corrective disclosures revealed the truth about misleading proxy statements); *In re EQT Corp. Sec. Litig.*, No. 2:19-cv-00754-RJC, 2022 U.S. Dist. LEXIS 143232, at *27-28 (W.D. Pa. Aug. 11, 2022) (certifying a class of acquiring company shareholders as of the proxy record date following submission of expert report opining that § 14(a) damages could be calculated through an out-of-pocket analysis measuring "[s]hare price declines caused by corrective disclosures . . . using event study analysis"); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 757 F. Supp. 2d 260, 291-93 (S.D.N.Y. 2010) (holding Section 14(a) plaintiffs could bring a direct claim seeking damages based on share price declines because "[t]hat decrease is not necessarily co-extensive with injury to the corporation").[3]

---

[3] *See also Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 245 (S.D.N.Y. 2012) (holding loss causation adequately pled for a direct Section 14(a) claim based on stock price declines); *New Jersey and Its Div. of Inv. v. Sprint Corp.*, 314 F. Supp. 2d 1119, 1142 (D. Kan. 2004) (sustaining direct § 14(a) claim because there was "clearly a connection between the [corporate action voted upon] and plaintiff's injury in that the stock price declined after the conflict of interest was revealed"); *In re Daimlerchrysler AG Sec. Litig.*, 294 F. Supp. 2d 616, 626 (D. Del. 2003) ("'Out-of-pocket' losses are the standard measure of damages for Rule 10b–5 and Section 14(a) claims."); *In re Real Estate Assoc. Ltd. P'ship Litig.*, 223 F. Supp. 2d 1142, 1152 (C.D. Cal. 2002) (for a direct § 14(a) claim, "generally, a plaintiff's injury will be the diminution in the value of his or her investment"); *Goldkrantz v. Griffin,* No. 97 CIV. 9075(DLC), 1999 U.S. Dist. LEXIS 4445, at *22 (S.D.N.Y. Apr. 6, 1999) ("standard" measure of damages for a direct § 14(a) claim based on the "decrease in value" of the stock).

The District Court itself recently granted class certification and conducted a trial in another case in which Section 14(a) plaintiffs sought damages based on a stock price decline. *See In re Alta Mesa Res., Inc. Sec. Litig.*, No. 4:19-cv-00957, slip op. at 1-2 (S.D. Tex. Jan. 24, 2022) (ECF No. 241) (granting plaintiffs' class certification motion "[f]or the reasons set forth in Plaintiffs' submissions"); Pls.' Motion for Class Certification at 23, *In re Alta Mesa Res., Inc. Sec. Litig.,* No. 4:19-cv-00957 (S.D. Tex. July 30, 2021) (ECF No. 187) (explaining plaintiffs' §14(a) stock price decline damages methodology).   Here, the M&R mistakenly distinguished the *Alta Mesa* case by arguing that the theory was independent of any harm to the stock price. ROA.10092. In *Alta Mesa*, both parties proposed jury instructions for damages based on stock price declines. *See* Parties' Amended Proposed Jury Charge and Jury Instructions at 37, 52-54, *In re Alta Mesa Res., Inc. Sec. Litig.,* No. 4:19-cv-00957 (S.D. Tex. Nov. 4, 2024) (ECF No. 929-6).

The only other courts that have directly addressed whether a Section 14(a) claim seeking damages based on a stock price decline is direct under Delaware law and *Tooley* have definitively reached the same holding: such a claim, like the 14(a) Plaintiffs' here, is direct. *See Zhou*, 2022 U.S. Dist. LEXIS 192565, at *35-36 ("Section 14(a) claim is direct, and plaintiffs have standing" where plaintiffs sought damages based on economic losses from "voting for the merger" even though all stockholders "would suffer equally," because the "fact that uninformed votes on the

merger may have a negative impact on the company does not alter shareholders' standing to bring claims in connection with their individual right to a fully informed vote"); *Bank of America*, 757 F. Supp. 2d at 291-92 (recognizing that if the value of the shareholder's shares decreases as a result of corrective disclosures, "that decrease is not necessarily co-extensive with injury to the corporation," and the shareholder has a direct claim); *see also In re Bank of Amer. Corp. Sec., Derivative & ERISA Litig.*, 281 F.R.D. 134, 141 (S.D.N.Y. 2012) (certifying class of direct claims under § 14(a)).

## B.     Plaintiffs' Claim Is Direct Under Delaware Law

Alternatively, under well-established Delaware law[4]—and Fifth Circuit authority applying that law—Plaintiffs' Section 14(a) claim is direct.

When considering whether a claim is direct or derivative, the Delaware Supreme Court has explained that an "important initial question has to be answered: does the plaintiff seek to bring a claim belonging to her personally or one belonging to the corporation itself?" *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 180 (Del. 2015). With respect to misrepresentation claims concerning a shareholder's right to "truthful and honest disclosures," the Delaware Supreme

---

[4] While McDermott was incorporated in Panama, both parties agreed that Delaware law should apply. *See* ROA.1765 (Defendants' Motion to Dismiss Plaintiff's § 14(a) Class Action Complaint); ROA.3495 (The Section 14(a) Lead Plaintiff's Opposition to Defendants' Motion to Dismiss); ROA.10083 (M&R).

Court has stated definitively that such claims "belong to the holders [of the shares]" and are "not claims that could plausibly belong to the issuer corporation." *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1126, 1139 (Del. 2016). Therefore, the Delaware Supreme Court held, such claims "are direct claims" and "are ones that only the holders can assert." *Id.*

In *Citigroup*, the Delaware Supreme Court addressed the question at issue here, a question certified by the Second Circuit Court of Appeals: "Are the claims of a plaintiff against a corporate defendant alleging damages based on the plaintiff's continuing to hold the corporation's stock in reliance on the defendant's misstatements as the stock diminished in value properly brought as direct or derivative claims?" *Id.* Like Plaintiffs here, the plaintiffs in *Citigroup* sought damages for "negligent misrepresentation" based on a decline in the price of the shares they held following disclosure of facts revealing allegedly inaccurate statements previously made by defendants. *Id.* at 1128-29.

The Delaware Supreme Court's answer was unequivocal. Under Delaware law, "the holder claims in [*Citigroup*] are direct" because "under the laws governing those claims," the claims at issue "are personal to the shareholder and do not belong to the corporation itself." *Id.* at 1126. In *Citigroup*, just as here, the fact that the claim "belong[s] to the holder, not the issuer, alone is enough to make the [plaintiffs'] Holder Claims direct." *Id.* at 1140.

This Court later relied on the Delaware Supreme Court's *Citigroup* decision to hold that investors do have standing to bring direct securities misrepresentation claims under Delaware law. *See Broyles v. Commonwealth Advisors, Inc.*, 936 F.3d 324, 326 (5th Cir. 2019) (under Delaware law, "securities fraud claims directly against perpetrators…for the fraudulent inducement of the purchase, sale or holding of securities are not converted into derivative actions merely because the securities were issued by a Delaware corporation or entity") (citing *Citigroup*, 140 A.3d at 1126, 1139-41).

Thus, under *Citigroup*, Plaintiffs' Section 14(a) claim—and the damages theory based on a decline in share price—is direct because it belongs to Plaintiffs, not McDermott.

Indeed, "under the laws governing" Section 14(a) claims, Plaintiffs' claims are personal to the individual shareholders, not the Company, because they assert an infringement of the right to vote. *See Zhou*, 2022 U.S. Dist. LEXIS 192565 at *36 (Section 14(a) plaintiffs have an "individual right to a fully informed vote," and thus standing to bring direct claims). Such claims are "direct, not derivative." *Lee v. Fisher*, 70 F.4th 1129, 1146-47, 1149 (9th Cir. 2023) (plaintiff could have brought "her action against Gap under § 14(a) and Rule 14a-9 as a direct action" "because her complaint is based on the theory that Gap's shareholders were denied the right to a fully informed vote at the 2019 and 2020 annual meetings"); *see also Virginia*

*Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) (shareholders who voted on a merger transaction could allege a private direct right of action under Section 14(a) on behalf of the minority shareholders); *Copeland v. Lane*, 621 F. App'x 449, 450 (9th Cir. 2015) ("to the extent that the alleged omissions and misrepresentations" underpinning a § 14(a) claim "denied [plaintiff] the right to a fully informed vote independent of any alleged injury to [the corporation] itself" it "constitute[d] a direct claim"); *Smith v. Robbins & Myers*, 969 F. Supp. 2d 850, 864 n.13 (S.D. Ohio 2013) ("[T]he Section 14(a) claim here is based on allegations that Defendants prevented the Company's shareholders from casting an informed vote on a merger and therefore it is the Company's shareholders and their individual, corporate suffrage rights that are implicated and harmed—making it a direct claim."). To conclude otherwise would be "contrary to the Congressional purpose of the statute as well as direct Supreme Court precedent." *In re Wells Real Estate Inv. Trust, Inc.*, CIVIL ACTION NO. 1:07-CV-862-CAP, 2010 U.S. Dist. LEXIS 143057, at *20-21 (N.D. Ga Aug. 2, 2010).

Just as under federal law (Section 14(a)), under Delaware law, "depriv[ation] of the right to a fully informed vote … is independent of any injury to the corporation." *New York City Emps' Retir. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) (applying Delaware law) (overruled on other grounds) (vacating district court's decision that Section 14(a) claim was derivative and noting that the right to

25

a fully informed vote "is a direct claim"); *see also Ebix*, 2014 Del. Ch. LEXIS, at *49 (right "to be fully informed" alleges "an injury independent of any harm to the corporation" and therefore "a direct claim"); *Dietrich*, 857 A.2d at 1029 ("[D]isclosure allegations are direct claims, as they are based in rights secured to stockholders by various statutes").

## C.  In Addition to Contravening Federal Law, the Lower Court Misapplied Delaware Law

The M&R—whose reasoning the District Court adopted without discussion—considered the governing Delaware law holding that deprivations of a shareholder's right to a fully informed vote are direct, only to reject it. *See* ROA.10084 (quoting *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006)). Then, the M&R misapplied another Delaware case—*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*—to incorrectly insist that Plaintiffs' damages theory somehow transforms their direct Section 14(a) claim into a derivative one. This was error because: (1) *Citigroup* clarified that the *Tooley* test is not necessary where shareholders bring claims that are based on the violation of a personal right belonging to the individual shareholders and, in any event (2) Plaintiffs satisfy the *Tooley* test.

### 1.  *Citigroup* clarified that *Tooley* is not dispositive.

Here, the analysis below focused on the two-prong *Tooley* test. The M&R reasoned that "[w]hen looking to Delaware law to determine whether Plaintiff's

claim is direct or derivative, I must begin with the Delaware Supreme Court's opinion in *Tooley* [],'" which laid out a two-prong test for determining whether a claim is derivative or direct. ROA.10083.[5] *Citigroup* clarified, however, that this test is unnecessary where, as here, a plaintiff undisputedly asserts the violation of a right belonging only to them, and not the company. As *Citigroup* explained, *Tooley* "**is not relevant** to the analysis of whether the holder claims at issue here are direct or derivative." *Citigroup*, 140 A.3d at 1126-27. "Rather, *Tooley* and its progeny deal with the narrow issue of whether a claim for breach of fiduciary duty or otherwise to enforce the corporation's own rights must be asserted derivatively or directly." *Id.* at 1127. *Tooley* is an unnecessary test "when a plaintiff asserts a claim based on the plaintiff's own right." *Id.* at 1129-40.

As noted above, here, Plaintiffs assert a Section 14(a) claim based on their (and individual shareholder class members') "own right" to a fully informed vote. *Id*. That right "belong[s] to the holding stockholders," not the Company. Defendants have never suggested—and would be unable to point to any case law holding—that a shareholder's voting right actually belongs to McDermott. That the right to a fully

---

[5] To the extent the M&R relied upon this Court's analysis in the 2005 decision *Smith v. Waste Management*, 407 F.3d 381 (5th Cir. 2005) when applying *Tooley*, *Smith* is inapposite here for the reasons discussed below. *See infra* Section II.D. Moreover, the panel deciding *Smith* did not have the benefit of the Delaware Supreme Court's two later 2015 and 2016 decisions in *NAF Holdings* and *Citigroup*, which each clarified that *Tooley* **only** applies to breach of fiduciary duty claims or other claims brought to vindicate the corporation's—not an individual shareholder's—rights.

informed vote belongs to the shareholders alone is, in fact, the one part of the analysis the M&R got right, finding that, consistent with *J.P. Morgan*, "where it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct." 906 A.2d at 772. "Reading *Tooley* to convert direct claims belonging to a plaintiff into something belonging to another party would, we confess, be alien to [the Delaware Supreme Court's] understanding of what was at stake in that case, or in the cases after *Tooley* that relied on it." *NAF*, 118 A.3d at 180.

### 2.    Even under *Tooley,* Plaintiffs' claim is direct.

*Tooley* established a two-prong test for whether a breach of fiduciary duty claim is direct or derivative: the "issue must turn **solely** on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" 845 A.2d 1031, 1033 (Del. 2004); *see also id.* at 1036 (explaining that these prongs apply "[i]n the context of a claim for breach of fiduciary duty"). Under both prongs, Plaintiffs' Section 14(a) claim is direct.

***Prong One: Shareholders—not the Company—suffered the alleged harm of infringement of their right to vote.*** As explained above, *see supra* Sections II.A, B, infringement of the right to vote harms "the suing stockholders, individually," *id.*

at 1033, not the corporation. As the M&R recognized, *see* ROA.10084, in cases applying *Tooley*, Delaware courts have repeatedly reinforced this rule. *See*, *e.g.*, *J.P. Morgan*, 906 A.2d at 772 ("[W]here it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct."); *In re MultiPlan Corp. Stockholders Litig.*, 268 A.3d 784, 802 (Del. Ch. 2022) (under *Tooley*, claim was direct because impairment of stockholders' "informed exercise of their redemption right" did not run to the corporation); *In re Tyson Foods, Inc.*, 919 A.2d 563, 601 (Del. Ch. 2007) ("Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is almost always an individual, not corporate, harm."); *Sehoy Energy LP v. Haven Real Estate Grp., LLC*, No. 12387-VCG, 2017 Del. Ch. LEXIS 58, at *23 (Del. Ch. Apr. 17, 2017) ("Allegations that nondisclosure prevented shareholders of a corporation from exercising their right to an informed vote or from selling their shares state a direct claim running to the individual stockholders, not the corporation."); *In re Ebix, Inc. Stockholder Litig.*, 2014 Del. Ch. LEXIS 132, at *48 (allegations of material misstatements in a proxy statement "are direct claims" because they "allegedly deprived Ebix stockholders of the ability to cast an informed vote"); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, Nos. 762-N, 763-N, 2005 Del. Ch.

LEXIS 133, at *44 (Del. Ch. Aug. 26, 2005) ("Generally, non-disclosure claims are direct claims.").[6]

Here, the M&R *agreed* that Prong One was satisfied, and that Plaintiffs' harm is direct. ROA.10084.

**<u>*Prong Two: Shareholders individually—not the Company—will receive the benefit of any recovery.*</u>** *Tooley* explained that Prong Two—who benefits from the "recovery or other remedy"—"***logically follow[s]***" from Prong One. *Tooley*, 845 A.2d at 1036. That is, *Tooley* provides that if the stockholder suffered the harm (prong 1), then the stockholder receives the benefit of any recovery (prong 2). Thus, under *Tooley*, Plaintiffs' claim ***must be direct*** since it is undisputed—and the M&R ***agreed***—that Plaintiffs satisfy Prong One. ROA.10084.

Specifically, Plaintiffs' claim for damages—and the expert analysis supporting it—measures the economic losses directly caused by the ***misrepresentations*** and suffered by ***shareholders***. *See* ROA.13780 (Plaintiffs' damages expert opining that he measured the damages "reasonably economically connected to the alleged misrepresentations"). Mr. Coffman estimated the "per share abnormal dollar decline" attributable to "corrective information" that revealed the

---

[6] The violation of the right to an informed vote can lead to either a breach of fiduciary under Delaware law or a violation of Section 14(a), just as the same facts can form the basis for multiple causes of action.

misrepresentations and omissions in the Proxy that Plaintiffs allege here. *See*, *e.g.*, ROA.13780 ¶¶94, 107-08, 126, 135, 149, 167–69, Exhibit 1. Mr. Coffman did not measure the losses from the projects McDermott suffered when it acquired them from CB&I, or the value of the economic losses from or "negative consequences of the Merger." ROA.13780 ¶15.

Significantly, the only recipient of a recovery here would be the individual class members—***not*** the Company, and ***not*** even ***all*** shareholders. As to the Company, McDermott is a Defendant in this action and allegedly made the misrepresentations that injured the class member shareholders; it will not and could not recover a penny. As to the shareholders, the subset that are class members are eligible to recover damages from the misrepresentations—namely only those who owned McDermott shares as of the Record Date and who held those shares through at least one corrective disclosure. Under the M&R's logic, all shareholders who owned shares on the date of a corrective disclosure would recover equally—but many holders of McDermott stock on the date of a disclosure would be foreclosed from recovering any damages here because they did not hold their shares on the Record Date.

Consistent with *Tooley*'s instruction, no Delaware court has ever held that a plaintiff's alleged damages transform a direct claim into a derivative one. The M&R misconstrued *J.P. Morgan* as supporting the principle that under *Tooley*, "a

securities plaintiff has standing to assert a direct claim against a corporation only when the plaintiff's theory of liability **and** damages are **both** direct." ROA.10084-85 (emphases original). But the *J.P. Morgan* court did **not** consider damages based on a stock price decline, did **not** hold such damages unrecoverable, did **not** hold such damages rendered a direct voting infringement claim derivative, and did **not** hold that alleging such damages deprived plaintiffs of standing. *J.P. Morgan* held only that the shareholder plaintiffs could not recover the specific compensatory damages they alleged. *See J.P. Morgan*, 906 A.2d at 772 (while agreeing that the "claim is direct," noting "that proposition leaves unanswered []: what relief flows from the disclosure violation?"). Because the shareholders sought "money damages **equal** to the dollar value of [a merger] premium" allegedly overpaid by the company, *id*. at 769, the claimed compensatory damages measured damages owed to the company and were not separately recoverable by individual shareholders. *Id*. at 772.[7]  That is a far cry from the situation here.

---

[7] The M&R cited another Delaware case, *Thornton v. Bernard Techs., Inc.*, for the same mistaken principle that a damages theory could transform a direct claim into a derivative claim. ROA.10084 (citing No. 962-VCN, 2009 Del. Ch. LEXIS 29, at *11 n.28 (Del. Ch. Feb. 20, 2009)). But, like *J.P. Morgan*, that is not what *Thornton* held. *Thornton*, which addressed breach of fiduciary duty claims, agreed that the claims were "direct" but held that plaintiffs could not recover the money damages they sought because there was no connection between the harm—an impaired vote for directors—and the damages sought: the value of the company. *Thornton* did not hold that the damages rendered plaintiffs' direct claims derivative.

### 3.    The M&R applied an obsolete test for prong two that *Tooley* rejected

To hold that Plaintiffs' Section 14(a) direct claim is actually derivative, the M&R concluded that Plaintiffs failed Prong Two of *Tooley* on the ground that "the stock price drops affected all shareholders equally and flows from harm done to McDermott." ROA.10085-87. This is known as the "special injury" test, and the M&R's reasoning is wrong for multiple reasons.

***First***, *Tooley* itself **rejected** the special injury test the M&R applied. In *Brookfield Asset Mgmt., Inc. v. Rosson*, the Delaware Supreme Court explained that *Tooley* "expressly disapproved" the "concept that a claim is necessarily derivative if it affects all stockholders equally" and instructed courts to discard the special injury test. 261 A.3d 1251, 1264, 1272 (Del. 2021) (noting that *Tooley* itself explained that the special injury test was "inaccurate" because "a direct, individual claim of stockholders that does not depend on harm to the corporation can also fall on all stockholders equally, without the claim thereby becoming a derivative claim"). The harm in a Section 14(a) claim illustrates the Delaware Supreme Court's point perfectly: deprivation of a fully informed vote falls on all stockholders entitled to vote—yet the related direct claim belongs to each individual stockholder, and the damages each different shareholder suffers are not equal, but vary according to whether they sold their shares, when and at what price.

**Second**, as noted above, the Company would receive no benefit from class members' recovery in this action. Plaintiffs seek individual damages for class members based on stock price declines to those class members' personally held shares; the Company cannot benefit either directly or indirectly from the class members' recovery. The Company would not benefit directly because it could not receive a penny from this litigation. Nor could a recovery "benefit" the Company indirectly because it cannot impact the value of the Company. In any event, the Supreme Court of Delaware expressly **rejected** the M&R's reasoning, explaining that *Tooley* does **not** require **any** "stockholder-plaintiff [] to show that it 'can prevail without showing an injury to the corporation' to bring a direct claim." *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 180 (Del. 2015) (explaining the no-injury-to-the-corporation rule only applies to the breach of fiduciary duty claims *Tooley* assessed).

**Third**, all shareholders were not equally injured by the alleged Section 14(a) harm pled here, and all shareholders will not recover equally. As noted above, the class in this action does not consist of all shareholders, but is limited to only shareholders (1) who held the stock as of the Record Date, and (2) who continued to hold the stock through at least one stock price decline at issue here. Only this subset of shareholders were harmed by the alleged misrepresentations and would be entitled to recover the damages caused by those misrepresentations. In fact, the related

Section 10(b) action and individual opt-out case arising from these same events include McDermott shareholders who are not members of the 14(a) class, because they purchased **after** the Record Date. *See Delman v. GigAcquisitions3, LLC,* 288 A.3d 692, 710 (Del. Ch. 2023) (holding a claim was direct because recovery did not benefit the Company, since "many stockholders who would indirectly benefit from a derivative recovery" did not have a right to recover under the claim advanced).

Further, even the subset of shareholders who are part of the class will ***not*** recover the same amounts. The amount of damages vary significantly even among class members, including based on when each investor sold their shares in relation to the multiple corrective disclosures, whether the investor sold the entirety of their shares held as of the Record Date or some portion thereof, and the loss attributable to the misstatements at that time. Following judgment, each potential class member would submit a claim form to receive individual compensation based on a formula that takes into account their own specific investing circumstances, such as the number of shares they held on the Record Date and the timing and amount of any sales made after the disclosures, and this will determine the amount of their individual recovery. *See*, *e.g.*, ROA.14659-60, ROA.14678-79 (Hearing Tx. 31:15-32:8, 50:22-51:22).

### 4.    The M&R rested its erroneous holding on a misstatement of Plaintiffs' damages theory.

To the extent the M&R based its recommendation on the conclusion that Plaintiffs seek damages from a purported "overpayment" for CB&I, ROA.10084-85, that conclusion is also wrong.

Plaintiffs have never pleaded a claim based on a purported overpayment for CB&I. As Plaintiffs previously explained, "the words 'overpayment' or 'overpaid' do not appear anywhere in the 99-page Amended Complaint, brief in support of certification, or accompanying expert report." ROA.8592-93. Plaintiffs have only ever pleaded that they were harmed by the deprivation of a fully informed vote due to misrepresentations in the Proxy. For this reason, a Southern District of New York case that Defendants cited below, *In re Romeo Power Inc. Securities Litigation*, *see* ROA.15906, is inapposite because that opinion was based on the overpayment damages alleged in the plaintiffs' complaint. *In re Romeo Power Inc. Sec. Litig.*, 21 Civ. 3362 (LGS), 2022 U.S. Dist. LEXIS 99005, at *15 (S.D.N.Y. June 2, 2022) ("Plaintiffs d[id] not dispute Defendants' characterization of the claim as based on the theory that RMG stockholders were damaged because the proxy statement overstated the value of Romeo," and "[t]he Complaint itself note[d] that shareholders 'did not receive their fair share of the value of the assets and business of the combined entity.'").

Likewise, Plaintiffs' expert does not calculate a purported "overpayment" for CB&I. In an overpayment case, damages are "based on the difference in value between the price paid for the target and the target's true value at the time of the merger (i.e., if it had been valued correctly)." *Delman*, 288 A.3d at 710. By contrast, here, Mr. Coffman explained that he "do[es] ***not*** assume that Class Members' damages are limited to what McDermott shareholders may have 'overpaid' for purchasing CB&I." ROA.13788, ¶11 (emphasis added). Instead, Mr. Coffman measures only the abnormal dollar drop in McDermott's stock price attributable exclusively to corrective information—which would have no place in an "overpayment" case. Again, this is the exact same damages theory from the parallel Section 10(b) cases, but Defendants have never suggested that those claims are "overpayment" claims or that their damages theory makes their claims derivative.

In their supplemental briefing to the District Court, Defendants submitted their expert Ms. Allen's *ipse dixit* that "under Plaintiffs' theory," class members were damaged either because McDermott would not have acquired CB&I or paid too much for it. ROA.13530. But Ms. Allen did not explain how the four stock price declines caused by specific corrective disclosures purportedly equate to an amount McDermott purportedly overpaid for CB&I. Indeed, Ms. Allen even admitted that her opinion was not based on either economic or academic support. *See* ROA.18028 (conceding that her opinion is "just logical conclusions," and that she "doesn't use

anything other than the most basic logic."). Should this case proceed to summary judgment and trial, Plaintiffs will move to exclude Ms. Allen's opinion under Rule 702 and *Daubert*, given its total lack of any economic, academic, or record support, and its complete disconnection from Plaintiffs' actual theory, which has never been that McDermott overpaid for CB&I. The Northern District of Illinois was forced to reject Ms. Allen's opinions in a previous securities litigation for the same flaw. *See In re Allstate Corp. Sec. Litig.*, No. 16 C 10510, 2020 U.S. Dist. LEXIS 239236, at *10 (N.D. Ill. Dec. 21, 2020) (finding Ms. Allen's "first conclusion" "irrelevant" because it "fundamentally misunderstands Lead Plaintiff's allegations and theory of the case").

### 5.    The Court below did not address Plaintiffs' rescission damages theory

The District Court also ignored Plaintiffs' alternative rescission damages methodology, which likewise corresponds to Plaintiffs' direct Section 14(a) claim. Defendants did not contest—or even address—this theory of damages in the supplemental briefing to the District Court, even though Plaintiffs' damages expert put it forward.

Rescission seeks to put individual Class members in the position they would have been in absent the wrong. ROA.13343 ¶¶174–76. This methodology is consistent with the Supreme Court's holding that Section 14(a) "authorizes a federal cause of action for rescission or damages to a corporate stockholder with respect to

a consummated merger which was authorized pursuant to the use of a proxy statement alleged to contain false and misleading statements violative of § 14(a) of the Act." *J.I. Case Co. v. Borak,* 377 U.S. 426, 428 (1964). At least one court has found that rescission damages sought in a Section 14(a) action necessarily corresponds to a direct claim because such damages are "in direct contradiction to" "the possibility of recovery to the corporation" under a derivative claim. *Rice v. Genworth Fin. Inc.*, No. 3:17cv59, 2017 U.S. Dist. LEXIS 137110, at *32 (E.D. Va. Aug. 25, 2017) (finding that, where plaintiffs brought a direct Section 14(a) claim, "the class plaintiffs here could seek rescissory damages under §14(a)"). Thus, even if Plaintiffs cannot bring a direct Section 14(a) claim based on stock price declines (which they can), Plaintiffs still have standing to bring a Section 14(a) claim seeking rescissory damages—an issue the District Court did not consider.

### D.    *Smith v. Waste Management* Does Not Govern This Claim

In adopting the M&R's reasoning, the District Court appears to have adopted the M&R's reliance upon *Smith v. Waste Management, Inc*. to conclude that, for a Section 14(a) claim, a "direct injury must be independent of any alleged injury to the corporation" and cannot be based on a stock price decline. ROA.10083-84 (citing 407 F.3d 381, 384 (5th Cir. 2005)). However, *Smith* does not apply here.

*First*, *Smith* analyzed the direct/derivative question through the lens of *Tooley*, which *Citigroup* later clarified does not control claims belonging to the

shareholder alone. *See supra* Section I.C.1. Indeed, *Smith* predates the Delaware Supreme Court's rulings in both *NAF Holdings* and *Citigroup*, by at least ten years, and the *Smith* panel therefore could not benefit from the Delaware Supreme Court's clarifications in those decisions of the limits of *Tooley*'s application. Likewise, the *Smith* panel did not have the benefit of *Citigroup*'s additional clarification that securities claims based on misstatements that caused a decline in stock price—like those here—"are personal to the stockholder and do not belong to the corporation itself." 140 A.3d at 1126, 1140-41. Tellingly, a post-*Smith* Southern District of Texas decision analyzing whether a Section 14(a) claim was direct or derivative applied neither *Smith* nor *Tooley*, instead looking to federal securities law cases to conclude that where a Section 14(a) claim is based on the "allegation … that the shareholders' voting rights have been impaired," the "shareholders have been damaged and [] the claim is direct." *Rudolph v. Cummins*, No. H-06-2671, 2007 U.S. Dist. LEXIS 28869, at *9 (S.D. Tex. Apr. 19, 2007) (finding that plaintiffs had stated "both a direct and derivative claim" under Section 14(a) because plaintiffs also alleged—unlike Plaintiffs in this action—that the "***Company*** was damaged as a result of the material misrepresentations and omissions in the Proxy statement.").

**Second**, since *Smith*, this Court has relied on *Citigroup* to reject the idea that *Smith* means that securities claims based on stock price declines must be derivative under Delaware law. In *Broyles*, this Court cited *Citigroup* to hold that Delaware

law does ***not*** require investor plaintiffs to bring derivative actions for losses caused by a "decline or lack of value, but instead recognizes their cause of action directly" under securities laws—including for claims based on the "holding of securities." *Broyles*, 936 F.3d at 326; *see also supra* Section II.B. In so holding, this Court rejected the lower court's reasoning that both *Smith* and *Tooley* required "that a stockholder's claims of fraud and negligent misrepresentation were derivative" under Delaware law. *Broyles v. Cantor Fitzgerald & Co.*, No. 10-854-JJB-CBW, 2017 U.S. Dist. LEXIS 236714, at *14 (M.D. La. Feb. 2, 2017) (vacated and remanded).

***Third***, the *Smith* plaintiff did not bring a claim based on infringement of the right to vote—which, as explained above, federal securities law and Delaware law agree is a direct claim. *See supra* Sections II.A, B. To the contrary, the *Smith* plaintiff was a former shareholder who brought state law claims of "fraud and negligent misrepresentation" based on misrepresentations about the firm's expected future earnings, and whose shares declined in value after negative earnings reports. *See Smith*, 407 F.3d at 382-83. *Smith* certainly did not create a rule that claims based on a violation of a voting right are derivative if the damages are based on a stock price decline, as the M&R appears to have concluded. *See supra* Section II.C.3.

## III   THE DISTRICT COURT ABUSED ITS DISCRETION IN UPENDING THE LAW OF THE CASE

This Circuit reviews decisions to reverse the law of the case for abuse of discretion. *See Smith v. Cain*, 77 F.3d 476, 476 (5th Cir. 1995) (reviewing denial of motion to reconsider law of the case for abuse of discretion). "A district court that premises its legal analysis on an erroneous understanding of the governing law has abused its discretion." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005) (quoting *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005)).

Here, the District Court was only empowered to reverse its initial Order if there were changed circumstances or if the Order was "dead wrong." Neither situation occurred here. Moreover, the Order was based on an erroneous understanding of federal and Delaware law—and so the District Court abused its discretion in reversing itself and upending the law of the case.

### A.   Courts May Only Reverse the Law of the Case in Extraordinary Situations

"'The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Dauzat v. Carter*, 752 F. App'x 188, 189 (5th Cir. 2019) (quoting *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016)). The doctrine "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.*,

486 U.S. 800, 816 (1988) (quoting 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice P0.404[1], p. 118); *see also In re Celgene Corp., Inc. Sec. Litig.*, 747 F. Supp. 3d 748, 761 (D.N.J. 2024) ("Time was invested, attention was focused, and a decision was made. … Undoing that resolution does not make sense from the perspective of 'finality and efficiency.'").

This Circuit formalized the high standard for reversing the law of the case in a three-part test: a court may only reverse the law of the case if "(1) the evidence on a subsequent trial was substantially different, (2) controlling legal authority has since made a contrary decision of the law applicable to such issues, or (3) the earlier decision was clearly erroneous and would cause manifest injustice." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 703 (5th Cir. 2014); *In re Ford Motor Co.*, 591 F.3d 406, 411-12 (5th Cir. 2009). This Circuit has held that a court abuses its discretion when it overturns the law of the case without satisfying any of the conditions in the test. *Williams v. Bexar County*, No. 98-51187, 2000 U.S. App. LEXIS 39928, at *2 (5th Cir. July 14, 2000) (holding court abused its discretion in rescinding prior order where court's "detailed opinion reflects no adequate basis for same").

## B.     The Law of the Case Doctrine Applies to Reconsideration of Prior Rulings by the Same Court and Judge

In its Order, the District Court provided ***no*** reasoning for reversing the law of the case. ROA.13983. The only hint of any basis is that the District Court "adopt[ed]

the reasoning of Judge Edison's [M&R]," *id.*, which had declined to apply this Court's three-part test on the demonstrably wrong ground that the test only applies in "the unique MDL context." ROA.10080. The M&R concluded that "the law-of-the-case doctrine does not bar [Judge Edison's] consideration of Defendants' standing arguments," *id.*, because the court "is 'free to reconsider and reverse its [motion to dismiss] decision for any reason it deems sufficient.'" ROA.10088 (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010)). The District Court's adoption of the M&R's erroneous reasoning to overturn the law of the case was an abuse of discretion.

*First*, this Court's three-part test applies to all actions and claims, not only to those consolidated into MDLs. *See, e.g.*, *Hernandez v. Garland*, No. 22-60110, 2023 U.S. App. LEXIS 24674, at *8 (5th Cir. Sep. 15, 2023) (three-part test applied to a petition for review of an order from the Board of Immigration Appeals); *City Pub. Ser. Bd. v. Gen. Elec. Co.*, 935 2d 78, 82 (5th Cir. 1991) (three-part test applied to non-MDL breach of warranty, product liability, and failure to warn action).

*Second*, *Zarnow* does not permit a court's reconsideration of its prior orders unconstrained by any limiting principles, as the M&R said. ROA.10074. *Zarnow* stands for the uncontroversial principle that "the law-of-the-case doctrine does not operate to ***prevent*** a district court from reconsidering prior rulings." *Zarnow*, 614 F.3d at 171. *Zarnow* does not, however, hold that the law of the case doctrine does

not apply at all. To the contrary, "the court's discretion" to reconsider prior interlocutory orders "is limited by the law of the case doctrine and 'subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason, permitted, to battle for it again.'" *Salcido ex rel. K.L. v. Harris Cnty., Texas*, No. H-15-2155, 2018 U.S. Dist. LEXIS 212983, at *10 (S.D. Tex. Dec. 18, 2018); *see also Smith*, 77 F.3d at 476 (district court did not abuse its discretion in denying motion to reconsider, holding a litigant's arguments on a motion to reconsider "are barred by the law-of-the-case doctrine").

Thus, to determine whether to reconsider a prior ruling, courts analyze the same three factors in the three-part law of the case test: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *Civelli v. Mulacek*, No. H-17-3739, 2025 U.S. Dist. LEXIS 129616, at *8 (S.D. Tex. Mar. 28, 2025); *see also Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*, 403 F. Supp. 3d 610, 617 (S.D. Tex. 2019) (same); *Deeds v. Whirlpool Corp.*, Civ. A. H-15-2208, 2017 U.S. Dist. LEXIS 127461, at *38 (S.D. Tex. Aug. 10, 2017) (same).

None of these conditions is met here.

### C.     The Order Fails the Three-Part Test to Reverse the Law of the Case

#### 1.     As Defendants acknowledged, there is no "substantially different" evidence

The Order fails the first prong because, between the District Court's September 2023 decision rejecting the M&R and the March 2025 Order adopting it, the parties submitted no evidence "substantially different" from evidence the District Court originally considered. The parties' renewed class certification briefing contained no new evidence at all; in fact, Defendants' renewed opposition to class certification was nearly verbatim the same brief it submitted in the first round of briefing. *Compare* ROA.8215 *with* ROA.10663.

Instead, Defendants sought leave to submit "new" expert evidence on damages and liability—but even Defendants acknowledged that it merely "confirm[ed]" the evidence and argument the District Court had previously considered. ROA.13334-36. For example, Defendants argued that Mr. Coffman's expert damages report "confirms" that Lead Plaintiff's claim is derivative because it measures damages "using the decline in the market value of McDermott's stock price," *see* ROA.13335, but this is the exact theory the Court had previously considered and sustained. Likewise, Defendants pointed to their rebuttal damages expert, Ms. Allen, but that evidence was also nearly verbatim the same expert evidence Defendants had previously submitted, and Defendants again argued that it

merely "confirm[ed]" the same "overpayment" argument the District Court had previously rejected. ROA.13335; *see also supra* Section II.C.4.

### 2.    The law did not change

The Order fails the second prong because neither the District Court, nor any party, nor the M&R pointed to any change in the law to reverse the law of the case—and there is none. *Civelli*, 2025 U.S. Dist. LEXIS 129616, at *12 (reconsideration denied where defendants "disagree with the court's resolution of their breach of contract claim, but do not raise any change in the law").

### 3.    The District Court's prior decisions were not clearly erroneous—they were correct

The Order fails the third prong because the District Court's prior decisions were not "dead wrong." "To be clearly erroneous," a decision must be "more than just maybe or probably wrong; it must be dead wrong." *Hopwood v. State of Texas*, 236 F.3d 256, 272-73 (5th Cir. 2000); *accord Deutsche Bank Nat'l Trust Co. v. Burke*, 902 F.3d 548, 551 (5th Cir. 2018). As this Circuit made clear, "[i]n practice, [it has] rarely used the last exception." *Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, L.L.C.*, 850 Fed. Appx. 213, 216 (5th Cir. 2021) (quoting *Burke*). Even "if the question is close, by definition it cannot be dead wrong." *Id.* (*quoting Vine v. PLS Fin. Servs., Inc.*, 807 F. App'x 320, 327 (5th Cir. 2020)).

As Plaintiffs explained *supra*, the District Court's original decisions were correct, and only the M&R (and the District Court's adoption of it) were erroneous.

*See supra* Section II. Thus, the Order fails the third prong. *See Hernandez*, 2023 U.S. App. LEXIS 24674, *8 ("Mere doubts or disagreement about the wisdom of a prior decision of this or a lower court will not suffice for this exception."); *All. for Good Gov't v. Coal. for Better Gov't*, 998 F.3d 661, 668 (5th Cir. 2021) (same); *Civelli*, 2025 U.S. Dist. LEXIS 129616, *12 (no "clear error" or "manifest injustice" where defendants "have amplified and improved their arguments but present nothing new that would warrant reconsideration").

## IV    THE M&R ERRED IN CONCLUDING PLAINTIFFS FAILED TO SHOW PREDOMINANCE

While the District Court's Order denying class certification was limited to standing, which therefore is the only issue on appeal, the underlying M&R denied class certification on a second erroneous basis. Specifically, the M&R held that Plaintiffs could not satisfy the predominance requirement of Rule 23(b) because Plaintiffs' proposed "damages model" purportedly does not "measure only those damages attributable to [their] theory [of liability]" as required by *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). ROA.10088-93. The M&R found that Plaintiffs' damages theory did not "match" the liability theory because "[t]he application of this stock-drop-loss theory to the facts of this case has no legal basis—no court has ever awarded damages under [Section] 14(a) to the shareholders of an *acquiring* company based on a drop in their share prices." ROA.10090 (emphasis original). The Court should reject the M&R's *Comcast* holding for three reasons.

**First**, as described in detail above, *see supra* p.14, Plaintiffs' stock-price-decline damages theory **does** "match" their liability theory. Plaintiffs' damages expert Mr. Coffman measures the harms attributable to the misstatements in the proxy by measuring the stock price declines attributable solely to the corrective disclosures. This is evidence of economic losses directly attributable to the liability theory of harm flowing from alleged misstatements and is in fact the typical measure of damages that is applied in Section 14(a) cases.[8]

**Second**, the M&R erroneously reasoned Plaintiffs' damages theory did not "match" their liability theory simply because no court has yet "awarded" such damages to stockholders of an **acquiring** company in a merger. ROA.10090. Put simply, the M&R imposed a requirement that, to satisfy *Comcast*, some court must have previously entered a judgment and awarded damages in a Section 14(a) direct

---

[8] To the extent the M&R's holding rested on the finding that damages in a Section 14(a) claim cannot be based on an out-of-pocket damages methodology, the M&R is wrong. *See In re Daimlerchrysler AG Sec. Litig.*, 294 F. Supp. 2d at 626 (*"**Out-of-pocket' losses are the standard measure of damages for Rule 10b-5 and Section 14(a) claims.**"*); *Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *83 (C.D. Cal. June 17, 2010) (same); *Jaroslawicz v. M&T Bank Corp.*, No. 15-00897-EJW, 2024 U.S. Dist. LEXIS 21269, at *52 (D. Del. Feb. 7, 2024) (holding that plaintiffs may seek damages including but not limited to out of pocket losses); *In re Willis Towers Watson PLC Proxy Litig.*, No. 1:17-cv-1338 (AJT/JFA), 2020 U.S. Dist. LEXIS 162810, at *22 (E.D. Va. Sept. 4, 2020) (certifying class and rejecting *Comcast* challenge to Section 14(a) class alleging out-of-pocket damages); *Goldkrantz v. Griffin*, 97 CIV. 9075 (DLC) 1999 U.S. Dist. LEXIS 4445, at *20 (S.D.N.Y. Apr. 6, 1999) (for Section 14(a) claim, explaining that the "normal measure of recovery is out-of-pocket damages").

action brought by stockholders of an acquiring company in a merger. No such requirement exists under *Comcast* or otherwise.

As a practical matter, no Section 14(a) class action brought by stockholders of an acquiring company has ever been tried to a verdict at all; thus, the happenstance of a lack of 14(a) trial verdicts does not establish that such damages are prohibited as a matter of law. Moreover, the inverse is also true: no other court has ever rejected a 14(a) damages award based on a stock price decline simply because the plaintiffs were stockholders in an acquiring company.

To the contrary, in the absence of any similar Section 14(a) case tried to judgment,[9] at least two courts have assessed the exact issue raised here, and at the same critical pre-trial stage of class certification. The Court in *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, **certified** a class of Section 14(a) shareholders of an acquiring company for a direct claim seeking damages based on a stock price decline. 757 F. Supp. 2d 260 (S.D.N.Y. 2010). That the parties settled before trial does not disturb the fact that the court there found plaintiffs' damages theory sufficient to grant class certification. Likewise, the court in *In re EQT Corp. Securities Litigation*, brought on behalf of shareholders of an

---

[9] As noted above, *see supra* Section II.A, the District Court here did allow a Section 14(a) claim seeking damages based on stock price declines to proceed to trial, with jury instructions on the same, but the case settled before the jury could reach a verdict.

acquiring company, rejected defendants' *Comcast* challenge to the damages methodology offered for Section 14(a) claims and certified a class. No. 2:19-cv-754, 2022 U.S. Dist. LEXIS 143232, at *77 (W.D. Pa. Aug. 11, 2022).[10]

Moreover, the M&R's reasoning has no support in the law. As described above, *see supra* Section II.A, courts have universally permitted Section 14(a) plaintiffs to seek damages based on stock price declines—and none of these courts have confined their holdings to stockholders of the target company.

***Third***, neither the M&R nor Defendants' supplementary briefing to the District Court addressed Plaintiffs' alternative rescissory damages methodology, which fully satisfies *Comcast*. As courts have found, *see supra* Section II.C.5, Section 14(a) plaintiffs can seek rescissory damages. Therefore, even if Plaintiffs' principal damages methodology runs "afoul" of *Comcast* as the M&R erroneously found, M&R at 16, Plaintiffs have offered an alternative method that does not.

## CONCLUSION

The Order of the District Court should be reversed in accordance with the points and authorities raised herein and the case remanded for further proceedings.

---

[10] The M&R's basis for distinguishing another case also fails. In *In re Heckman Securities Litigation*, the district court certified a class where plaintiff shareholders in an acquiring company brought a direct Section 14(a) claim to recover losses based on a share price decline caused by misrepresentations. 869 F. Supp. 2d 519, 542 (D. Del. 2012). The M&R ignored this alleged basis for losses, incorrectly distinguishing *Heckman* as pleading only damages based on lost IPO proceeds, which the M&R characterized as losses individual to shareholders. ROA.10092.

Dated: August 18, 2025                    Respectfully submitted,

                                          /s/ Chet B. Waldman

                                          Chet B. Waldman
                                          Matthew Insley-Pruitt
                                          Justyn Millamena
                                          Jeffrey Chambers
                                          **WOLF POPPER LLP**
                                          845 Third Avenue
                                          New York, NY 10022
                                          Telephone: (212) 759-4600
                                          Facsimile: (212) 486-2093
                                          cwaldman@wolfpopper.com
                                          minsley-pruitt@wolfpopper.com

                                          John Rizio Hamilton
                                          Katherine M. Sinderson
                                          Aasiya F. Mirza Glover
                                          Jonathan D'Errico
                                          **BERNSTEIN LITOWITZ BERGER &
                                          GROSSMANN, LLP**
                                          1251 Avenue of the Americas
                                          44th Floor
                                          New York, New York 10020
                                          Johnr@blbglaw.com
                                          katiem@blbglaw.com
                                          aasiya.glover@blbglaw.com
                                          jonathan.derrico@blbglaw.com

                                          *Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that:

This brief contains 12,342 words, excluding the items exempted by <u>Fed. R. App. P. 32(f)</u>. The brief's type size and typeface comply with <u>Fed. R. App. P. 32(a)(5)</u> and (6).

DATED: August 18, 2025

/s/    Chet B. Waldman

Chet B. Waldman
Matthew Insley-Pruitt
Justyn Millamena
Jeffrey Chambers
**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093
cwaldman@wolfpopper.com
minsley-pruitt@wolfpopper.com

John Rizio Hamilton
Katherine M. Sinderson
Aasiya F. Mirza Glover
Jonathan D'Errico
**BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP**
1251 Avenue of the Americas
44th Floor
New York, New York 10020
Johnr@blbglaw.com
katiem@blbglaw.com
aasiya.glover@blbglaw.com
jonathan.derrico@blbglaw.com

*Attorneys for Plaintiffs-Appellants*

53

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Brief for Plaintiffs-Appellants to be served on counsel for Defendants-Appellees via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with a Notice of Docket Activity pursuant to Local Rule 25:

David Dykeman Sterling
Amy Pharr Hefley
Jonathan Mark Little
Anthony Joseph Lucisano
Charles Frank Mace
Baker Botts, L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1234
david.sterling@bakerbotts.com
amy.hefley@bakerbotts.com
mark.little@bakerbotts.com
anthony.lucisano@bakerbotts.com
frank.mace@bakerbotts.com

I also certify that I electronically filed the Brief for Plaintiffs-Appellants with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system:

Clerk of Court
United States Court of Appeals, Fifth Circuit
United States Courthouse
600 South Maestri Place
New Orleans, LA 70130
(504) 310-7700

on this 18th day of August 2025.

/s/ Chet B. Waldman
Chet B. Waldman